The Chancellor.
The several grounds urged in support of this demurrer are objections which reach the whole equity of the bill.
First. It is objected that the complainants are not entitled to maintain this suit, because they have no interest in the alleged trust. The argument assumes that the complainants, by the bill, show no connection with the trust, except that they were among the donors who contributed the fund to establish the trust. It is insisted that the mere contributors to a fund creating a trust for charitable purposes cannot call the trustees of that fund to an account for a misapplication of the funds or any other breach of the trust. This is certainly true, as a general rule, and there must be something peculiar in the transaction beyond the mere fact of contribution to give a contributor to a charitable fund a foothold in this court for the purpose of questioning the disposition of the fund. A party who comes into a court of equity for such a purpose must have some interest in the trust. In general, he must be a trustee, or cestui que trust, or have some reversionary interest in the trust fund.
But I think it sufficiently appears, on the face of the bill, that the complainants, as well as having been con *348 tributors to the fund, are interested in it as cestuis que trust. It is true thei’e is no specific allegation to this effect, and it may be that the draftsman of the bill did not consider the importance of the complainants assuming this position before the court. But the whole scope of the bill is to the effect, that if the trust be established, the complainants are entitled to the privilege of worshipping in the church. If they have been deprived of this privilege, which was one of the objects of the trust, they have a right to seek redress in this court. The trust set up is, that the church was to be free for the use of visitors at Cape May of all denominations of Christians, and that the title was to be vested in and held for this purpose by individuals holding the Presbyterian faith. The breaches alleged are, that the church has been conveyed to an ecclesiastical body under the organization and government of the Methodist Episcopal Church, and that the church building has been used, almost exclusively, for the worship of persons of the Methodist persuasion, while other denominations of Christians have been entirely excluded therefrom. If the complainants, with others, contributed to a fund to erect a church; if the property was originally conveyed to individuals of the Presbyterian persuasion ; if a trust was created by which the property was to be held by individuals holding the Presbyterian faith, to be used as a house of worship for the complainants and others, visitors at Cape May; if the individuals in whom the trust property was vested have violated their trust— then the complainants, who have been deprived of the benefit of the trust property, are entitled to the protection of this court, and to have the trust property restored to its original purpose and trusts.
Another objection is, that the bill shows a parol trust, and of such a character as- cannot be established by parol testimony.
I do not think the objection is well taken as to the fact upon which it is based. The deed from McCray and wife *349 to Joseph S. Higbeo and others is, upon the face of it, a trust deed. It is true it does not state specifically the terms of the trust which the bill seeks to establish — that the property was to be held by Presbyterians, and for the benefit of visitors at Cape May. But the deed describes the property as a house of worship. It is described as “ the new Presbyterian Church on Cape Island.” Tt is conveyed to persons bolding the Presbyterian faith — to the “ trustees of the Presbyterian Church at Cold Spring, in the Lower township of Cape May, and state of New Jersey,” and their successors in office. But the evidence of the trust does not rest here. The bill expressly declares that the trust will appear by the minutes and proceedings of tlie meeting of the individuals who originated the enterprise, and by the books and subscription papers which are in the possession of the complainants, and which they tender themselves ready to produce. I think the hill is of a character to call for an answer from the defendants.